UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL AARON WITKIN,

    Plaintiff,

    v.

M. LEE, et al.,

    Defendants.

No.  2:17-cv-0232-JAM-EFB P

FINDINGS AND RECOMMENDATIONS

    Plaintiff is a state prisoner proceeding without counsel in this action brought under 42 U.S.C. § 1983.  Plaintiff's motion to proceed in forma pauperis ("IFP") under 28 U.S.C. § 1915 was granted on March 24, 2017.  ECF Nos. 6, 7.  Defendants now seek dismissal of the action, arguing that plaintiff's allegation of poverty was false.  ECF No. 37.  Defendants also contend that plaintiff's state law negligence claim is deficient.  For the reasons that follow, defendants' motion must be granted.

    I.    Background

    In his motion to proceed IFP, plaintiff declared, under penalty of perjury, that he had received no income in the prior 12 months, had no valuable property, and had no assets.  ECF No. 2 at 1-2.  Plaintiff signed the motion on December 5, 2016, and it was filed on February 2, 2017. *Id.*  An officer from his institution of incarceration (California State Prison, Solano) signed the "certificate" portion of the IFP application, indicating that, during the prior six months, plaintiff's trust account had an average monthly balance of $0 and average monthly deposits of $0.  *Id.* at 2.

1   The attached trust account statement showed that, on December 1, 2016, plaintiff had received

2   into his trust account a settlement check for $4,722.77, but that the same day the entirety of the

3   amount was debited from his account for various restitution fines and other obligations. *Id.* at 3.

4       Defendants present evidence that plaintiff hid assets from the court in his IFP application.

5   First, defendants request judicial notice of the August 12, 2016 settlement of *Witkin v. Swarthout*,

6   No. 2:13-cv-01931-GEB-KJN.  That request is granted.  Fed. R. Evid. 201.  The record in that

7   case shows that plaintiff agreed to settle the case for $10,625.00.  ECF No. 37-2 at 7.  Plaintiff

8   agreed to use "approximately $4,700" of the settlement amount to pay off his restitution fines and

9   asked that the remaining money be forwarded to his mother. *Id.* at 7-8.  Defendants' evidence

10  shows that a check for $5,666.09 was issued to Elena Witkin on November 9, 2016. *Id.* at 21.

11      The court also grants defendants' request for judicial notice of the November 1, 2016

12  settlement conference in *Witkin v. Solis*, No. 1:12-cv-01256-AWI-MJS, in which plaintiff agreed

13  to settle the case for $1,200.  ECF No. 37-2 at 17.  Defendants' evidence shows that a check for

14  $1,200 was issued to Elena Witkin on January 27, 2017. *Id.* at 54.

15      Lastly, the court grants defendants' request for judicial notice of the January 27, 2017

16  "Notice of Proof of Availability of Funds for Plaintiff's Deposition of Dr. B. Barnett" in *Witkin v.*

17  *Lotersztain*, Case No. 2:15-cv-00638-MCE-KJN.  ECF No. 37-2 at 49-51.  That filing shows

18  checking and savings accounts held by "the Witkin Family Trust" at Schools Financial Credit

19  Union holding $12,205.10 in assets and $6,200.76 in debts (a car loan and a credit card) for the

20  statement period of December 1, 2016 through December 31, 2016.[1]

21      In his verified opposition, plaintiff does not dispute any of the evidence presented by

22  defendants.  ECF No. 42.  Instead, he claims it shows his honesty in the IFP application.

23  According to plaintiff, the evidence shows that he did not have any settlement funds under his

24  control at the time he executed the application because he had directed the payments be made to

---

25      [1] Defendants also seek judicial notice of transcripts of various phone conversations
26  between plaintiff and others that were recorded by plaintiff's institution of incarceration.  The
    court questions whether these transcripts are appropriate subjects of judicial notice but need not
27  engage with the issue as the transcripts are not necessary to the disposition of the instant motion.
    Accordingly, the court has not considered the transcripts in formulating these findings and
28  recommendations.

his mother.  Plaintiff declares that he owed his parents about $44,000 for various litigation-related loans they had advanced him and was using the settlement funds to repay them.  ECF No. 42-1 at 2.  Plaintiff attests that he does not own or control the assets in the Witkin Family Trust.  *Id.* at 3-4.  Instead, he states that his parents were willing to loan him money (presumably from that account) to pay for the deposition in *Lotersztain*.  *Id.*

II. The Motion to Dismiss

Defendants seek dismissal of the case with prejudice under 28 U.S.C. § 1915(e)(2)(A), which provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue[.]"  The statute was amended in April of 1996; it had previously provided that the court "*may* dismiss the case if the allegation of poverty is untrue[.]"  28 U.S.C. § 1915(e) (1996) (emphasis added).

Section 1915(e)(2)(A) regards procedures to be followed after an individual has applied for, and been granted, permission to proceed IFP under 28 U.S.C. § 1915(a).  Section 1915(a) allows a person to proceed IFP after he submits to the court an affidavit that includes a statement of all of the person's assets and a statement that the person cannot pay the filing fee.  Additionally, a prisoner seeking to proceed IFP must also submit a certified copy of their prison trust account statement for the six months prior to the filing of the complaint.  28 U.S.C. § 1915(a)(2).  An IFP affidavit "is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life."  *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (considering the impact of the filing fee on the budget of the applicant in determining that she should have been granted IFP status).  Where the IFP applicant is a prisoner, however, courts recognize that most necessary life expenses are covered by the government.  *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) (noting that plaintiff's entire $2,000 in assets were available to him to pay for his lawsuit because the prison paid for his food, clothing, shelter, and medical care).

In this district, plaintiffs generally seek IFP status by submitting a form application.  E.D. Cal. Website, http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/ (last checked

1    October 10, 2019).  Relevant to this case, the form asks the applicant to list all income from the

2    prior 12 months, any money in a bank account, and any other assets of value.  The form

3    concludes with the following declaration, above the applicant's signature: "I declare under

4    penalty of perjury that the above information is true and understand that a false statement may

5    result in a dismissal of my claims."

6        On December 5, 2016 plaintiff completed and signed the 2002 version of this application.

7    ECF No. 2.  (The form was revised in 2010).  He averred that, in the past 12 months, he had not

8    received any money from any source.  *Id.* at 1.  That statement was not true.  He further averred

9    that he had no money in any bank account and owned no other valuable property or assets.  *Id.* at

10   2.  Plaintiff included the required certification and trust account statement.  *Id.* at 2-4.  The trust

11   account statement showed that plaintiff had received income from a settlement on December 1,

12   2016 (four days before plaintiff signed the IFP affidavit) totaling $4,722.77 but that the entire

13   amount had been applied to satisfy his restitution obligations on the same day.  *Id.* at 3.  Because

14   the affidavit and trust statement indicated that plaintiff had no money, the court granted his

15   request to proceed IFP.  ECF No. 7.  Defendants argue that this application was deliberately

16   inaccurate, warranting dismissal under § 1915(e)(2)(A).

17       Courts have not been totally uniform in their application of § 1915(e)(2)(A), but a close

18   reading of the cases applying the statute reveals consistent considerations guiding the courts'

19   analyses.  The U.S. Court of Appeals for the Ninth Circuit provided a starting point in *Escobedo*,

20   787 F.3d at 1234 n.8, stating that, to dismiss a complaint under § 1915(e)(2)(A), the court must

21   find that the allegation of poverty was not just inaccurate, but made in bad faith.  Consistent with

22   that approach, other courts have concluded that, where the allegation of poverty is untrue but

23   there is no showing of bad faith, the court should impose a lesser sanction than outright dismissal

24   with prejudice, for example, revoking IFP and provide a window for the plaintiff to pay the filing

25   fee, or dismissing without prejudice.  *Camp v. Oliver*, 798 F.2d 434, 438 (11th Cir. 1986);

26   *Mahone v. Pierce Cnty.*, No. C14-5665 BHS-KLS, 2014 U.S. Dist. LEXIS 170997, at *7-8 (W.D.

27   Wash. Oct. 21, 2014); *Jacobsen v. Am. Honda Motor Co.*, No. CV 10-134-PK, 2010 U.S. Dist.

28   LEXIS 80060, at *4-9 (recommending dismissal without prejudice where plaintiff failed to

4

1   disclose income on IFP application but the evidence did not conclusively show intentional

2   misrepresentation).

3        Courts that have declined to dismiss an action under § 1915(e)(2)(A) have generally based

4   their decisions on the actual poverty of the plaintiff, despite a technical inaccuracy in the IFP

5   application, and the absence of a showing of bad faith.  *Escobedo*, 787 F.3d at 1234 n.8 (dismissal

6   not warranted where plaintiff claimed to be paying a certain amount in "rent" despite actually

7   owning her home, because her mortgage payment was equivalent to a payment of rent and

8   plaintiff owned no equity in the home); *Camp*, 798 F.2d at 438-49 (reversing district court's

9   dismissal where there was no finding that plaintiff's inaccuracy foreclosed IFP eligibility);

10  *Hammler v. Alvarez*, No. 18-CV-326-AJB(WVG), 2019 U.S. Dist. LEXIS 22837, at *2-5 (S.D.

11  Cal. Feb. 13, 2019) (dismissal not warranted where plaintiff failed to reveal over $1,000 in

12  settlement funds because such funds were immediately and entirely used to pay plaintiff's

13  restitution fines); *Ruffin v. Baldwin*, No. 18-cv-1774-NJR, 2018 U.S. Dist. LEXIS 203411, at *7-

14  10 (S.D. Ill. Nov. 30, 2018) (dismissal not warranted where plaintiff did not list over $4,000 in

15  settlement funds received in the six months preceding the application because the funds were

16  revealed on the accompanying trust account statement (indicating no intent to conceal them) and

17  because, by the date of the application, plaintiff had spent the money and was thus eligible for

18  IFP); *Griffin v. Moon*, No. 1:12-cv-02034-LJO-BAM (PC), 2016 U.S. Dist. LEXIS 130812, at *7

19  (E.D. Cal. Sept. 23, 2016) (dismissal not warranted where plaintiff had received funds between 8

20  and 20 years prior to his IFP application and there was no evidence that he currently had such

21  funds).

22        On the flip side, courts routinely dismiss with prejudice cases upon finding that the

23  plaintiff has intentionally withheld information that may have disqualified plaintiff from

24  obtaining IFP status or has otherwise manipulated his finances to make it appear that a plaintiff is

25  poorer than he actually is; i.e., where the facts show that the inaccuracy on the IFP application

26  resulted from the plaintiff's bad faith.  Thus, in *Kennedy v. Huibregtse*, 831 F.3d 441, 442-44 (7th

27  Cir. 2016), the Seventh Circuit affirmed the district court's dismissal with prejudice of a

28  complaint pursuant to § 1915(e)(2)(A) where the plaintiff failed to reveal that he had a trust

5

1   account outside of prison, managed by a friend, containing about $1400 at the time of the

2   plaintiff's IFP application.  The court rejected plaintiff's claim that he did not know the balance

3   of the account at that time and thought it had only about $10, because he spent over $600 from it

4   just before and after the application.  *Id.* at 444.  Importantly, the court found that, even if the

5   district court would have granted the plaintiff IFP status if it had known about the trust account,

> 6,7,8   hiding assets is not a permissible alternative to seeking the judge's assistance.  An applicant has to tell the truth, then argue to the judge why seemingly adverse facts (such as the trust fund in this case) are not dispositive.  A litigant can't say, "I know how the judge *should* rule, so I'm entitled to conceal material information from him."

9   *Id.* at 443 (emphasis in original).

10   Similarly, the Seventh Circuit affirmed a dismissal with prejudice under § 1915(e)(2)(A)

11   where the plaintiff had not disclosed a savings account he controlled with a balance of over

12   $32,000 at the time of his IFP application.  *David v. Wal-Mart Stores, Inc.*, 669 F. App'x 793 (7th

13   Cir. 2016).  The court rejected the plaintiff's explanation that he regarded the account as off-

14   limits because he kept that money for his family in case of financial hardship.  *Id.* at 794.  The

15   plaintiff had used funds from the account to pay $600 for a seminar and thus his claim that he

16   could not have used the money for the filing fee was disingenuous.  *Id.*  And, as in *Kennedy*, the

17   court emphasized that the plaintiff must disclose assets to the court and allow the court to assess

18   their availability to him.  *Id.* at 794.

19   The Second Circuit reached the same conclusion in *Vann v. Comm'r of the N.Y.C. Dep't*

20   *of Corr.*, 496 F. App'x 113 (2d Cir. 2012), affirming dismissal with prejudice where the plaintiff

21   made false statements and intentionally concealed income on his IFP application.  *Id.* at 114.

22   Plaintiff had omitted about $2,000 of income from the application.  *Id.* at 115-16.  The court

23   found irrelevant whether the plaintiff had spent the money before submitting his IFP application,

24   because the statute required him "to accurately and truthfully state his financial history and

25   assets," and he had not done so.  *Id.* at 116.  Moreover, the plaintiff was "an experienced litigator

26   with extensive knowledge and familiarity with the in forma pauperis system."  *Id.*  This fact

27   supported a finding of bad faith.  *Id.* at 115 ("To determine whether a plaintiff has acted in bad

28   /////

faith a court may consider a plaintiff's familiarity with the in forma pauperis system and history of litigation.")

In a good number of cases finding bad faith, prisoner-plaintiffs have diverted funds in the period leading up to their IFP application to others, usually family members.  In *Roberts v. Beard*, No. 15cv1044-WQH-RBM, 2019 U.S. Dist. LEXIS 120744 (S.D. Cal. Aug. 2, 2019), the plaintiff had received a $3,000 settlement on October 21, 2014, transferred $2,000 to his sister on the same day, and used the remainder to pay outstanding court filing fees.  *Id.* at *3-12.  On April 14, 2015, the plaintiff submitted an IFP application indicating that he had not received any money from any other sources in the prior twelve months.  *Id.*  When the defendants sought dismissal under § 1915(e)(A)(2), the plaintiff claimed he had forgotten about the $3,000 settlement, had not benefitted from it, and no longer had the money at the time of his application.  *Id.* at *10.  The court rejected these claims as not credible based on the plaintiff's extensive litigation history and familiarity with the IFP process.  *Id.* at *7-11 (quoting *Vann*).

In *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463 (S.D.N.Y. 2004), the plaintiff sought IFP status on October 27, 1998, despite accepting settlement offers in two other cases totaling $13,500 in the prior three weeks.  *Id.* at 464-65.  She stated on her IFP application that she had enough money in an account in the community to pay the fee, but could not access the money because prison officials were not allowing her to receive checks.  *Id.* at 464.  She did not disclose the settlements.  While her IFP application was pending, she asked that the settlement checks be sent to her mother, and they were.  *Id.* at 465.  At the same time, the plaintiff prohibited prison officials from receiving checks on her behalf.  *Id.*  She did not disclose to the court that she had herself created the barrier keeping checks out of her prison account.  *Id.* at 466.  The court found that plaintiff, who had obtained IFP status in 15 other suits, had diverted the funds to her mother's address to perpetuate a negative balance in her prison account while misrepresenting to the court that circumstances beyond her control made it unfeasible to have money deposited there. *Id.* at 468-69.  This manipulation of the IFP system, especially in combination with similar conduct by the plaintiff in other cases, justified dismissal of her case with prejudice.  *Id.* at 468-69.

1    In *Richmond v. Housewright*, 101 F.R.D. 758 (D. Nev. 1984), the plaintiff did not reveal

2    $2,100 in income he had received during the 12 months preceding his IFP application for work

3    performed as an inmate law clerk and paid directly to the plaintiff's fiancée.  Finding that the

4    plaintiff had "deliberately lied," the court dismissed the case.  *Id.* at 759.

5    These cases reveal that the essential questions before the court are: (1) was plaintiff's

6    allegation of poverty untrue and, if so, (2) did plaintiff submit the untrue IFP application in bad

7    faith?  The evidence submitted by defendants, and not disputed by plaintiff, shows that plaintiff

8    was not honest in his IFP application and, in fact, that plaintiff has attempted to exploit the IFP

9    process in this case in a manner that the court must not allow.

10    A.  Plaintiff's allegation of poverty was untrue

11    Even disregarding the Witkin Family Trust, which plaintiff claims he only has access to

12    when permitted by his parents, plaintiff received $5,666.09 in November 2016, less than a month

13    before he averred that he had received no income from any source in the prior 12 months.  That

14    plaintiff diverted this money to his mother, for whatever reason, is irrelevant to whether he

15    received it in the first place.  The settlement was made with *him*, to compensate *him*, and it was at

16    *his* direction that the money was sent to his mother.  While plaintiff attests that he was paying his

17    parents back,[2] plaintiff was obligated to disclose the income and to allow the court to assess

18    whether, including consideration of that money, he qualified for IFP status.  In addition, when

19    plaintiff claimed to have no income, he knew he would be receiving an additional $1,200

20    settlement.  Plaintiff could easily have taken that money into his trust account and paid the filing

21    fee therefrom.  Instead, he again chose to divert the money to his mother.

22    Plaintiff relies heavily on *Ruffin*, where the court excused the plaintiff's failure to report

23    income received prior to his IFP application but which the plaintiff claimed to have used to repay

24    loans from his mother.  2018 U.S. Dist. LEXIS 203411, at *8-9.  To the extent that *Ruffin* stands

25    for the proposition that a court should excuse material omissions of income from IFP applications

26    where the plaintiff asserts that such income was used to repay a loan, the court rejects such a

27

---

28    [2] The court notes that, aside from his self-serving assertions, plaintiff has submitted
nothing to the court to show the existence of loans from his parents.

1    proposition.  Such a rule would eviscerate § 1915(e)(2)(A) by allowing plaintiffs to manipulate

2    their financial history by diverting income to friends and family members and then claiming to

3    have had no income at all.  Instead, the court agrees with the Seventh and Second Circuits (and

4    other cases discussed above) – the plaintiff must honestly disclose all income, including income

5    the plaintiff has chosen to spend on loan repayment or whatever else, and allow the court to make

6    the IFP determination based on all the facts.

7            Additionally, the court notes that, in *Ruffin*, the plaintiff's trust account statement,

8    attached to his IFP application, revealed the funds that he had not disclosed in the application.  *Id.*

9    at 10.  The court found this fact indicated that the plaintiff had not deliberately tried to conceal the

10   funds.  *Id.*  Here, plaintiff's diversion of his settlement proceeds to his mother meant that these

11   funds were not reflected on his trust account statement, a situation much more akin to *Cuoco* than

12   *Ruffin*.

13                          B.  Plaintiff acted in bad faith

14           Plaintiff is an experienced litigant.  He has sought, and obtained, IFP status in four civil

15   rights cases and two habeas cases preceding this one (and applied for IFP status in three cases

16   filed after).  *Witkin v. Solis*, No. 1:12-cv-01256-AWI-MJS; *Witkin v. Swarthout*, No. 2:13-cv-

17   01931-GEB-KJN; *Witkin v. Lotersztain*, No. 2:15-cv-00638-MCE-KJN; *Witkin v. M.*, No. 2:15-

18   cv-02493-KJM-CKD; *Witkin v. Lee*, No. 2:17-cv-00232-JAM-CKD; *Witkin v. Blackwell*, No.

19   2:17-cv-02692-JAM-AC; *Witkin v. Lotersztain*, No. 2:19-cv-00406-TLN-KJN; *Witkin v.

20   Brazelton*, No. 2:12-cv-00391-CMK; *Witkin v. Arnold*, 2:14-cv-1709-GEB-KJN.  That

21   experience, plus the timeline of relevant events in this action, shows plaintiff's deceptive conduct.

22           Plaintiff's original complaint was based on disputes he had with prison officials over meal

23   portions that occurred over the course of 2015 and 2016.  ECF No. 1.  Plaintiff settled the

24   *Swarthout* matter in August of 2016.  ECF No. 37-2 at 5-13.  It is reasonable to assume that

25   plaintiff, an experienced litigant who had four months to mull it over, had an idea in August 2016

26   that he may file suit based on his ongoing dispute with prison authorities over meal portions.

27   /////

28   /////

1    Nevertheless, he directed that all of the settlement proceeds beyond the amount required to satisfy

2    his restitution obligations (an amount exceeding $5,500), be made over to his mother.  In

3    November of 2016, just one month prior to executing his IFP application for this action, plaintiff

4    settled another action for $1,200.  Yet plaintiff mentioned neither settlement agreement in his IFP

5    application.  These facts show that plaintiff, rather than apprise the court of his true financial

6    situation, intentionally kept funds out of his prison account (and off the court's radar) to improve

7    his chances of obtaining IFP status.  It is such conduct that § 1915(e)(2)(A) was enacted to

8    prevent.  *Vann*, 496 F. App'x at 115 ("Section 1915(e)(2)(A) serves the purpose of preventing

9    abuse of the judicial system by weeding out the litigants who falsely understate their net worth in

10   order to obtain in forma pauperis status when they are not entitled to that status based on their

11   true net worth.") (internal quotation marks omitted).  Plaintiff did not commit a minor

12   misstatement or omission; he manipulated how he received substantial income in order to conceal

13   it from the court.  Accordingly, the case must be dismissed with prejudice.  *David*, 669 F. App'x

14   at 795 (dishonesty and abuse of the IFP privilege warrant dismissal with prejudice).

15       Because the court finds that this action must be dismissed pursuant to 28 U.S.C.

16   § 1915(e)(2)(A), the court need not address defendants' additional arguments concerning

17   plaintiff's negligence claims.

18       III.    Conclusion and Recommendation

19       For the reasons stated above, it is hereby RECOMMENDED that defendants' March 13,

20   2019 motion to dismiss (ECF No. 37) be granted and that the case be dismissed with prejudice

21   pursuant to 28 U.S.C. § 1915(e)(2)(A).

22       These findings and recommendations are submitted to the United States District Judge

23   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24   after being served with these findings and recommendations, any party may file written

25   objections with the court and serve a copy on all parties.  Such a document should be captioned

26   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

27   /////

28   /////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 15, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE